# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARY JORDAN, | : | |
| on behalf of her minor child, C.R.J., | | |
| | : | |
| Plaintiff, | | Case No.  3:11-cv-316 |
| | : | |
| vs. | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J.  Newman |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| | | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED FOR AN IMMEDIATE AWARD OF CHILD'S SUPPLEMENTAL SECURITY INCOME BENEFITS; (3) PLAINTIFF'S REQUEST FOR A SENTENCE SIX REMAND BE DENIED AS MOOT; AND (4) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Mary Jordan brings this case on behalf of her minor child, C.R.J. (the "claimant" or "CRJ"), challenging the Administrative Law Judge's ("ALJ") determination that CRJ is "not disabled" and therefore unentitled to Child's Supplemental Security Income ("Child's SSI") benefits.  *See generally Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147 (6th Cir. 2002).

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 17), the administrative record (doc. 9), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed a Child's SSI application on behalf of CRJ on February 26, 2008, alleging CRJ has been under a disability since May 1, 2004. PageID 39. Plaintiff claims CRJ is disabled by Crohn's disease,[2] colitis in the large and small intestines, migraine headaches, depression, and anxiety disorder. PageID 156.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ James Knapp in June 2010. PageID 72-113. Thereafter, ALJ Knapp issued a written decision, concluding that CRJ was not disabled. PageID 39-51.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant was born on May 24, 1994. Therefore, she was a school-age child on February 26, 2008, the date the application was filed, and is currently an adolescent (20 CFR § 416.926a(g)(2));

2. The claimant has not engaged in substantial gainful activity since February 26, 2008, the application date (20 CFR §§ 416.924(b) and 416.971 et seq.);

3. The claimant has the following severe impairments: 1) Crohn's disease and 2) recurrent migraine headaches (20 CFR § 416.924(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.924, 416.925 and 416.926);

5. The claimant does not have an impairment or combination of impairments that

---

[2]Crohn's disease, also known as regional enteritis, is "[a]n inflammation of the small intestine, frequently involving only the last 12 to 14 inches, but occasionally affecting other parts of the small intestine or extending into the colon (large intestine).... Clinically, the condition is accompanied by crampy abdominal pain, diarrhea, anorexia (loss of appetite), and loss of weight. Pathologically, the disease is marked by patchy inflammation, deep ulcers which may bore through the wall of the intestine and form fistulas, a narrowing of the lumen (interior diameter) of the intestine by fibrosis (invasion or overgrowth of fibrous tissue), and an influx of lymphocytes (certain white blood cells)." 5-R ATTORNEYS' DICTIONARY OF MEDICINE 1495 (2005).

>    functionally equals the Listings  (20 CFR §§ 416.924(d) and  416.926a); and

6. The claimant has not been disabled, as defined in the Social Security Act, since February 26, 2008, the date the application was filed (20 CFR § 416.924(a)).

PageID 44-50.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 29-31; *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff filed this timely appeal on September 2, 2011.  Doc. 1.

### B. Administrative Hearing Testimony

CRJ is 5'1" tall, and weighed approximately 109 pounds at the time of the hearing. PageID 66.  She was then sixteen years old.  *Id*.

CRJ testified that her primary impairment is Crohn's disease.  PageID 61-62.  She occasionally experiences flare-ups, which in turn cause diarrhea, abdominal pain, and headaches. PageID 62.  CRJ was hospitalized for two weeks in 2008 and eight days in 2009 for such flare-ups.  *Id*.  During a flare-up, she loses her appetite, which causes her weight to fluctuate by as much as fifteen pounds.  PageID 63.  She visits the doctor approximately once every two weeks. PageID 62.  She testified that she experiences nausea several times a day, and has migraine headaches three times per week.  PageID 62, 66.

CRJ has been a cheerleader since she was in elementary school.  PageID 64.  She testified that her ability to cheerlead, however, has diminished over the past few years.  *Id*.  She was able to cheerlead during football games during the year prior to the administrative hearing, but not basketball games because she was "too weak" and the "doctor wouldn't let [her] cheer anymore."  *Id*.  She has a driver's license, but is not permitted to drive because she gets dizzy when she "stand[s] up or move[s] around a lot," or when she's dehydrated.  PageID 64-65.

CRJ testified that she is currently being treated for Crohn's disease with the drug Humira, but it "hasn't been working."  PageID 64.   She is unable to take Humira shot if she is sick.  *Id*. Additionally, the Humira medication can cause dizziness, headaches and stomach pains.  *Id*.  She is fearful of having to be on a feeding tube if the Humira is not successful.  PageID 65.

CRJ gets upset easily, and is frustrated that she is unable to hang out with her friends or regularly participate in sports.  *Id*.  Her grades in school are A's, B's, and C's.  PageID 66.  In the school year prior to the hearing, CRJ estimated that she missed approximately 21 days of school on account of illness.  *Id*.

Plaintiff testified that CRJ's Crohn's disease has progressively gotten worse since it was first diagnosed in 2004, and her immune system has gotten weaker.  PageID 68.  Plaintiff has noticed CRJ has more colds and flus than when she was younger.  *Id*.  Plaintiff stated that when the swine flu was rampant, school officials requested that CRJ not attend school because of her known susceptibility to illnesses.  PageID 68-69.

Plaintiff testified that during her Crohn's flare-ups, CRJ has difficulty eating.  PageID 69.  Plaintiff stated CRJ's physicians initially "thought it was psychological from where she has so much diarrhea…she starts having spasms in her bottom so she basically shuts herself down.  And then anything that she does [eat], of course, comes right back out one way or the other...[which causes a] vitamin deficiency."  *Id.*  Plaintiff testified that approximately four weeks before the hearing, she took CRJ to the doctor's office because of a flare-up.  Testing then revealed that CRJ's "vitamin deficiency was so bad that she was already heading for…the first stages of malnutrition.  Not for not eating, [but] from the disease itself."  *Id*.  Plaintiff has been informed that if the doctors are unable to control the condition with Humira, CRJ may have to start using a feeding tube.  *Id*.  Plaintiff further testified that CRJ must go to the hospital for four hours every Tuesday for a Humira injection.  PageID 70.

Plaintiff stated that CRJ started experiencing dizziness a few months prior to the hearing. PageID 70-71. As a result, CRJ started seeing a neurologist. PageID 71. Testing by the neurologist identified CRJ as having low blood pressure and vitamin deficiencies. *Id.*

Plaintiff also testified that CRJ's school has made a number of accommodations, including providing her with a tutor while she was hospitalized; allowing Plaintiff to pick CRJ up early from school when she is not feeling well; allowing CRJ to make up missed work; and allowing CRJ to complete coursework online. PageID 72-73. Plaintiff stated that the principal is often able to tell when CRJ is feeling ill because of the black and blue coloring under her eyes, and will call Plaintiff directly to tell her that CRJ needs to be picked up early from school. PageID 73.

Plaintiff testified that even on days when CRJ is not experiencing a flare-up, she nevertheless uses a heating pad to try to alleviate her abdominal pain, and frequently uses the toilet. PageID 73. Whenever CRJ has a flare-up, she spends a significant amount of time in bed. PageID 74.

### C. Medical Expert Testimony

Henry Maimon, M.D., a gastroenterology specialist, testified before the ALJ as a Medical Expert ("ME"). PageID 74-86, 140. Dr. Maimon opined that CRJ's condition did not meet or medically equal any Listing, including Listing § 105.06 (inflammatory bowel disease). Specifically, Dr. Maimon testified:

> My overall conclusions, based on all the lab work, the CAT scans, the x-rays, the treatment is this I don't think there's any question this patient has Crohn's disease. I don't think there's any question she has lots of medical problems.
>
> * * *
>
> [T]he problem with Crohn's disease is it's a disease we don't know the cause. We, we have multiple approaches, multiple medications. Rarely does any one of them work as, as this family's finding out. They're trying combinations of different drugs but sometimes they work, sometimes they don't, sometimes they counteract each other. It's a disease that's an ongoing problem with no clear cut,

>one, one-sided, one way treatment. It's -- we don't know what causes it. We think it's autoimmune or immunological. But there [are] infectious components. There [are] genetic components. There's all sorts of things that we do know about Crohn's disease but we don't know enough to get a handle on it to really treat it well unless the patient is extremely lucky and the doctor's lucky enough, I started to say smart enough, but I think the better word is lucky enough to put the right combination of drugs to help the patient. So I think this patient, this individual's got lots of problems. I think she's going to continue to have them and she may get worse. And when she does get worse, and I hope she doesn't, believe me, then she might (INAUDIBLE) meet, equal, or meet some of these Listings, the Listings. But on this date in 2010, in my opinion, she neither equals or meets the Listings despite the fact she certainly has multiple problems and I, I regret that she doesn't, at least in my opinion, meet them but, or equal them. But that's how I see the chart and the record and that's how they list it in the book with the criteria for equaling or meeting Listings to qualify for disability.

PageID 75-78.

The ALJ then asked Dr. Maimon if he is familiar with the childhood functional equivalency rating categories, to which Dr. Maimon responded "I'm really not familiar with that." PageID 78. To this, the ALJ stated, "I'm going to read you a couple of the categories and then you tell me whether you, applying it to this case whether you would consider the claimant to be, there's either no limitation, a less than marked limitation, a marked limitation, and an extreme limitation." *Id*. Dr. Maimon replied, "I think that number two you mentioned is pretty close to what she has." PageID 79. Shortly thereafter, Dr. Maimon interjected: "Well, wait a minute, what, I'm not sure what they mean by marked. Is that meaning severity?" *Id*.

The ALJ then gave the definition of a "marked" limitation, stating: "Marked limitation, this is a definition…this particular one [is] for health and physical well- being episodes of illness three times a year lasting longer than two weeks, or more frequently with shorter duration, or less frequently with longer duration." *Id*. Dr. Maimon replied, "Well, I, yeah, I think you could apply that. I think she fits that category." [3] *Id*.

---

[3] The ALJ did not provide the ME with the definition of an "extreme" limitation.

-7-

In support of his opinion -- that CRJ had a marked impairment in the area of health and well-being -- Dr. Maimon noted that the medicinal regimen prescribed by her doctors has had "some success" and "[i]t's not like she's confined to home." *Id*. He also noted that although the Crohn's disease impacts CRJ's school functioning, she nevertheless has never been held back a grade at school, and gets A's, B's and C's in her classes. PageID 80.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

Judicial review of the Commissioner's determination involves a twofold inquiry: (1) whether the findings of the ALJ's are supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found the claimant disabled. *Id.* As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Sixth Circuit has also noted "[e]ven if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own

regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746. Failure to do so will typically require reversal, notwithstanding that the ALJ's opinion is supported by substantial evidence. *Id.*

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

**B. Childhood Disability Standard**

The standard for evaluating a child's disability claim differs from that used for an adult. 42 U.S.C. § 1382c(a)(3); *see also Miller*, 37 F. App'x at 147. A child is considered disabled if he or she has a "medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (the "Listings").[4] 20 C.F.R. § 416.924(d).

---

[4] The Listing of Impairments (commonly referred to as the Listings) is found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from

In order to "meet" a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.925(d). In order to "medically equal" a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.926(a). In order to "functionally equal" a Listing, the child's impairment(s) must be of Listing-level severity; *i.e.*, they must result in "marked" limitations in two of the following six domains of functioning, **or** an "extreme" limitation[5] in one of the following six domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In completing this analysis, the Commissioner must assess all relevant factors, including: (1) how well the child initiates and sustains activities; how much extra help he or she needs; and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by medications or other treatment. 20 C.F.R. § 416.926a(a)(1)(3).

### III. ANALYSIS

CRJ's medical history has been adequately summarized in the parties' briefs, *see* doc. 11 at PageID 657-59; doc. 17 at PageID 680-85, and the Court will not fully repeat it here. Where applicable, the Court will identify the medical evidence relevant to its decision.

---

doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

[5]A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation is one that "interferes very seriously" with a child's daily activities and functioning. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." *Id.* "Extreme" is the rating given to the "worst limitations," but "does not necessarily mean a total lack or loss of ability to function." *Id.*

In her Statement of Errors, Plaintiff argues: (1) the ALJ's decision should be reversed because the ME's testimony did not constitute substantial evidence that Plaintiff did not functionally equal a Listing; (2) reversal is warranted because the ALJ improperly denied controlling weight to the opinion of treating pediatric gastroenterologist Farhad Ashai-Khan, M.D. -- *i.e.*, that CRJ's limitation in "health and physical well-being" is "extreme"; and (3) this case should be remanded under the Sixth Sentence of 42 U.S.C. § 405(g) for consideration of new evidence -- *i.e.*, new medical evidence, not before the ALJ, relating to CRJ's Crohn's disease. Doc. 11 at PageID 661-69. These arguments are addressed in turn.

### A. The ALJ's Decision to Accord Less Than Controlling Weight to Dr. Ashai-Khan's Opinion, and Instead Favor the Opinion of the ME, is Not Supported by Substantial Evidence.

It is well-established that the findings and opinions of treating physicians are generally entitled to substantial weight. Moreover, if those treating physicians' opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and uncontradicted by other substantial evidence, they are entitled to controlling weight. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required, even though ALJ's decision was otherwise supported by substantial evidence, where ALJ failed to give good reasons for not giving controlling weight to treating physician's opinion, thereby violating the agency's own regulations). Moreover, "a finding that a treating source medical opinion…is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (*quoting Blakley*, 581 F.3d at 408).

When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the

-11-

nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and these reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*. (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5). The ALJ's failure to adequately explain the reasons for the weight given to a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

Plaintiff does not challenge the ALJ's finding that CRJ neither met nor medically equaled a Listing. *See* doc. 11. Rather, the basis of Plaintiff's argument is that CRJ should have been found disabled during the ALJ's functional equivalence analysis given Dr. Ashai-Khan's opinion that CRJ's limitation in the "health and physical well-being" domain is "extreme." *Id*. at PageID 661-67; *see also* PageID 567-69. As Plaintiff argues, had Dr. Ashai-Khan's opinion been given controlling weight, CRJ would be "disabled" under 20 C.F.R. § 614.926a(a), as she would "functionally equal" a Listing.

In rejecting Dr. Ashai-Khan's opinion, the ALJ found the ME's opinion -- that CRJ's limitation in the "health and physical well-being" domain is "marked" -- to be "more consistent with the medical evidence of record as well as with the Regulatory definitions for marked vs. extreme impairment." PageID 50. However, the ALJ cites to no specific medical evidence or any other medical opinion of record in support of such a finding. Rather, the ALJ's stated basis for favoring the ME's opinion was because "Dr. Kahn would not be as familiar with Social Security standards of disability as would a long term Medical Expert like Dr. Maimon, especially one who has a specialty in the medical condition in question." PageID 50. Furthermore, in

-12-

rejecting Dr. Ashai-Khan's opinion, the ALJ presented no discussion of the regulatory factors of 20 C.F.R. § 404.1527, which require ALJs to consider the length of a physician's treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the physician's opinion in weighing medical source opinions.

Although "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has" is listed in 20 C.F.R. § 404.1527 under "other factors," neglecting the aforementioned factors, and instead favoring the opinion of a non-treating, non-examining ME because of his "familiar[ity] with Social Security standards of disability," unquestionably "denotes a lack of substantial evidence" in this case. *See Blakley*, 581 F.3d at 407. In addition, the ALJ's decision to accord controlling weight to the ME's opinion because of his "familiar[ity] with Social Security standards of disability" is especially troublesome in light of the ME's response ("I'm really not familiar with that") to the ALJ's question of whether he was familiar with the childhood functional equivalency rating categories. *Cf.* PageID 50, 78. The fact that the ALJ had to provide the limitation categories to the ME in order to elicit his testimony on the topic of functional equivalency -- and when he did, no definition for the "extreme" category was provided, *see supra* note 4 -- further undermines the ALJ's reliance on the ME's "familiar[ity] with Social Security standards of disability" as a basis of favoring the ME's opinion over that of Dr. Ashai-Khan. *See* PageID 78-80.

When applied to this case, the § 404.1527 factors weigh heavily in favor of Dr. Ashai-Khan's opinion warranting controlling weight under the "treating physician rule." *Blakley*, 581 F.3d at 406. Dr. Ashai-Khan is a gastroenterologist who treated CRJ for at least two years prior to the administrative hearing. *See* PageID 541-43. Dr. Ashai-Khan attended to CRJ during her hospitalization, and has operated on CRJ's intestines. *Id.*; PageID 520-21. Along with several

-13-

other physicians at the Dayton Children's Hospital Department of Gastroenterology and Nutrition, she has been responsible for monitoring and adjusting CRJ's medicinal regime, including changing CRJ's primary medication from Remicade to Humira. *Id.*; PageID 580-83.

The record demonstrates that Dr. Ashai-Khan's June 2010 opinion -- that CRJ's limitation in the "health and physical well-being" domain is "extreme" -- is based on objective medical findings, clinical examinations, and a history of direct treatment of CRJ over a number of years. Moreover, her opinion is well-supported by substantial evidence of record -- including other medical source findings -- and is consistent with Plaintiff's and CRJ's testimony regarding the extreme impact the Crohn's disease has on CRJ's day-to-day life, even when she is not experiencing a flare-up.[6]

The ALJ's decision thus violates the "treating physician rule" and Social Security regulations by failing to accord great weight, if not controlling weight, to Dr. Ashai-Khan's conclusion regarding the severity of CRJ's impairments. *Wilson*, 378 F. 3d at 544. As such, the

---

[6]The Court notes that the evidence of record indicates CRJ exhibits a significant number of the limitations listed in the "[e]xamples of limitations in health and physical well-being" in 20 C.F.R. § 416.926a(l)(4)(i)-(v). Those "examples," which "do not necessarily describe a 'marked' or 'extreme' limitation," but nevertheless are to be considered when "decid[ing] whether [the] medically determinable impairment(s) results in a 'marked' or 'extreme' limitation in this domain," are as follows:
> (i) You have generalized symptoms, such as weakness, dizziness, agitation (*e.g.*, excitability), lethargy (*e.g.*, fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s);
> (ii) You have somatic complaints related to your impairments (*e.g.*, seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia);
> (iii) You have limitations in your physical functioning because of your treatment (*e.g.*, chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments);
> (iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning; and
> (v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926a(l)(4)(i)-(v)

Court finds the ALJ's decision is unsupported by substantial evidence, and should be reversed. *Id.*

Recognizing that the ALJ's non-disability determination is unsupported by substantial evidence, the Court must next determine whether remanding for further administrative proceedings is appropriate. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 100. The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir 1994); *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D. Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.).

Such is the case here. The proof of disability -- including the opinion of Dr. Ashai-Kahan of CRJ's extreme limitation, the evidence of record regarding the frequent recurrence of CRJ's extreme symptomology, the medical evidence of record consistent with Dr. Ashai-Khan's opinion, and the testimony of CRJ and Plaintiff regarding the impact of the Crohn's disease on CRJ's life -- is great, and remand will serve no purpose other than delay. Therefore, all substantial factual issues have been resolved, and the record reflects that CRJ is disabled, and has been since on February 26, 2008, the date her SSI application was filed. Accordingly, the Court recommends remanding for an immediate award of Child's SSI benefits.

**B. Plaintiff's Request for a Sixth Sentence Remand is Moot in Light of the Court's Recommendation that Benefits be Awarded.**

Plaintiff argues that this case should be remanded under Sentence Six of 42 U.S.C. § 405(g), and cites the following bullet-point list of new medical evidence in support of her request:

- CRJ's inability to return to school for 3 weeks in November-December 2010 [PageID 632];

- Dr. Ashai-Khan's note in November 2010 that a possible side effect of the medication has caused a "viral setting" in CRJ's eyes three times since June 2010 [PageID 598];

- CRJ's weight was recorded as 103.2 pounds on January 10, 2011 [PageID 641], which is less than her weight of 111.1 pounds on September 10, 2009 [PageID 526];

- CRJ was directed on January 10, 2011 to "increase calories as much as possible." [PageID 642]; and

- Medication orders from January 10, 2011: "Plan to restart Humira on 1/22/11 if endoscopy from 1/18 shows resolving fungal infection"; "Plan to start methotrexate on 1/29/11"; "Plan to begin weaning Prednisone by 5 mg/week beginning on 2/5/11." [PageID 642].  Plaintiff claims "[t]ogether, these notes demonstrate a period where her medications not only failed to control Crohn's, the medications had to be stopped pending resolution of the very sort of infection to which users of these medications run chronic risk."

Doc. 11 at PageID 668.

In light of the Court's recommendation *supra* that benefits be awarded, the Court considers as moot Plaintiff's request for a remand for further administrative proceedings.

-17-

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's first two assignments of error to be meritorious, and reversal of the ALJ's non-disability finding warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE,** and **REVERSED**;

2. This case be **REMANDED FOR AN IMMEDIATE AWARD OF CHILD'S SUPPLEMENTAL SECURITY INCOME BENEFITS** consistent with this Report and Recommendation and the Social Security Act;

3. Plaintiff's request for a Sentence Six remand be **DENIED AS MOOT**; and

4. This case be **CLOSED** on the docket of this Court.

January 10, 2013                                    s/Michael J. Newman
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).